*IN THE DISTRICT COURT OF THE UNITED STATES*
*For the Western District of New York*

_____

**OCTOBER 2023 GRAND JURY**
**(Impaneled October 11, 2023)**

**THE UNITED STATES OF AMERICA**

    *-vs-*

**SUPERSEDING INDICTMENT**
**24-CR- 06045-EAW-MWP**

**JOHN ENGLER,**
    *(Counts 1-51)*
**ALEC DIERNA**
    *(Counts 1-51)*
**TOMMY LEE COBURN**
    *(Counts 1, 4-9, 51)*
**KYLE PAUL EDWARD GIBSON**
    *(Counts 1, 10-20, 51)*
**NICHOLAS SCARANTINO**
    *(Count 1)*
**HEATHER DIERNA**
    *(Counts 1, 4, 5, 8, 9)*

**Violations:**
Title 18, United States Code,
1341, 1349, 1956(h) and 2.
(51 Counts and 6 Forfeiture
Allegations)

## SUPERSEDING INDICTMENT

### The Grand Jury Charges That:

At all times relevant to this Superseding Indictment:

## INTRODUCTION

### A.    DEFENDANTS AND COCONSPIRATORS

1.    The defendants, JOHN ENGLER ("ENGLER") and ALEC DIERNA ("ALEC DIERNA"), the architects and ringleaders of the conspiracy and scheme, resided in the Boca Raton area in Florida.

2.      The defendants, TOMMY LEE COBURN ("COBURN") and KYLE PAUL
EDWARD GIBSON ("GIBSON"), resided in the Boca Raton, Delray Beach and Pompano
Beach areas in Florida.

3.      The defendant, NICHOLAS SCARANTINO ("SCARANTINO"), resided in
Van Nuys, California.

4.      The defendant, HEATHER DIERNA ("HEATHER DIERNA"), resided in
the Rochester, New York area.

5.      Coconspirators Dylan Paul Costanza, Bryan Lantry, T.H. and S.D. resided in
the Fort Lauderdale and Pompano Beach areas in Florida.

### B.   ENTITIES

*Engler Entities*

6.      On or about January 28, 2019, ENGLER incorporated Office Outlet U.S.A.,
LLC ("Office Outlet") in Florida.

7.      On or about June 14, 2019, ENGLER incorporated America's Best Chemicals,
LLC ("America's Best") in Florida.

8.      On or about February 11, 2021, ENGLER incorporated Engler Holdings LLC
in Florida.

*Alec Dierna's Entities*

9.      On or about August 12, 2020, ALEC DIERNA incorporated United
Chemicals, LLC ("United Chemicals) in Florida.

10.    On or about February 11, 2021, ALEC DIERNA incorporated Dierna Enterprise LLC in Florida.

***Engler's and Alec Dierna's Entity***

11.    On or about April 12, 2021, ENGLER and ALEC DIERNA incorporated Prince Venture Capital LLC in Florida.

***Costanza's Entities***

12.    On or about October 20, 2020, Dylan Paul Costanza incorporated Hi-Tech Industrial Company LLC ("Hi- Tech Industrial") in Florida.

13.    On or about January 27, 2021, Dylan Paul Costanza incorporated Simple Pro Solutions LLC ("Simple Pro Solutions") in Florida.

14.    On or about June 14, 2021, Dylan Paul Costanza incorporated Day Cost Marketing LLC ("Day Cost Marketing) in Florida.

***Coburn's Entities***

15.    On or about January 19, 2021, COBURN incorporated North Atlantic Supply Company LLC ("North Atlantic Supply") in New York.

16.    On or about June 28, 2021, COBURN incorporated Top Tier Chemicals LLC ("Top Tier Chemicals") in New York.

***Gibson's Entity***

17.    On or about February 18, 2021, GIBSON incorporated Nationwide Chemicals LLC ("Nationwide Chemicals") in Florida.

*__Scarantino's Entity__*

18.     On or about June 20, 2021, SCARANTINO incorporated Direct Chemical Solutions LLC ("Direct Chemical") in California.

*__T.H.'s Entities__*

19.     On or about February 26, 2021, T.H. incorporated Easton Chemical Products LLC ("Easton Chemical") in Florida

*__Lantry's Entities__*

20.     On or about May 13, 2021, Bryan Lantry incorporated Safety Supply Center LLC ("Safety Supply") in Florida.

21.     On or about September 14, 2021, Bryan Lantry had Union Gloves LLC ("Union Gloves") incorporated in Florida.

22.     On or about  July 12, 2021, Bryan Lantry incorporated Lantry Enterprise LLC in Florida.

*__S.D.'s Entities__*

23.     On or about August 26, 2021, S.D. incorporated Wholesale Chem Supplies LLC in Florida.

24.     On or about August 26, 2021, S.D. incorporated Five Star Warehouse LLC ("Five Star Warehouse") in Florida.

## COUNT 1
**(Conspiracy to Commit Mail Fraud)**

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and Count 51 are incorporated herein by reference.

## THE OBJECT OF THE CONSPIRACY

2.      Between in or about August 2020 and in or about July 2022, in the Western District of New York, and elsewhere, the defendants, JOHN ENGLER, ALEC DIERNA, TOMMY LEE COBURN, KYLE PAUL EDWARD GIBSON, NICHOLAS SCARANTINO and HEATHER DIERNA, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown to the Grand Jury, including Dylan Paul Costanza, Bryan Lantry, T.H. and S.D., to devise a scheme and artifice to defraud victim companies throughout the United States, and to obtain money and property from such victim companies by means of false and fraudulent pretenses, representations, and promises, and for the purposes of executing such scheme and artifice to place in any post office and authorized depository for mail matter, matter and things to be sent and delivered by the Postal Service; to deposit, and cause to be deposited, matter and things to be sent and delivered by private and commercial interstate carrier; and to knowingly cause to be delivered by mail and private and commercial interstate carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed matter and things, in violation of Title 18, United States Code, Section 1341.

3.      The object of the conspiracy and scheme was to mass mail documents that appeared to be legitimate invoices to many thousands of primarily large companies throughout the United States (collectively, the "Victim Companies" and individually, a

"Victim Company") to trick and defraud the Victim Companies into paying the fake and fictitious invoices ("fictitious invoices") under the mistaken belief that the Victim Companies had previously ordered and received the products listed on the fictitious invoices.  The names of the following sham companies identified below (collectively, the "Sham Companies") were used on the fictitious invoices:

     a.  Office Outlet - (John Engler)
     b.  America's Best - (John Engler)
     c.  United Chemicals - (Alec Dierna)
     d.  Hi-Tech Industrial - (Dylan Costanza)
     e.  North Atlantic Supply – (Tommy Coburn)
     f.  Top Tier Chemicals - (Tommy Coburn)
     g.  Nationwide Chemicals - (Kyle Gibson)
     h.  Direct Chemical - (Nicholas Scarantino)
     i.  Easton Chemical – (T.H.)
     j.  Safety Supply - (Bryan Lantry)
     k.  Union Gloves - (Bryan Lantry)

## OVERVIEW OF CONSPIRACY

### *Defendants/Coconspirators Entry in Conspiracy/Scheme*

4.     In or about January 2019, ENGLER began mailing fictitious invoices in the name of Office Outlet from Florida to Victim Companies and continued to do so until in or about August 2019.

5.     In or about August 2019, ENGLER then began mailing fictitious invoices in the name of America's Best from Florida to Victim Companies and continued to do so until in or about August 2020.

6.     In or about August 2020, ENGLER recruited ALEC DIERNA to participate in his scheme, which began the conspiracy.  Fictitious invoices in the name of ALEC

DIERNA's company, United Chemicals, were mailed from Florida to Victim Companies until in or about April 2021.

7.      In or about October 2020, Dylan Paul Costanza joined the conspiracy. Fictitious invoices in the name of Dylan Paul Costanza's company, Hi-Tech Chemical, were mailed from Florida to Victim Companies until in or about February 2021.

8.      In or about February 2021, GIBSON joined the conspiracy.  Fictitious invoices in the name of his company, Nationwide Chemical, were mailed from Florida to Victim Companies until in or about September 2021.

9.      In or about January 2021, COBURN and HEATHER DIERNA joined the conspiracy.  Fictitious invoices in the names of COBURN's companies, North Atlantic Supply and Top Tier Chemical, were mailed in bulk from Florida to HEATHER DIERNA in the Rochester, New York area until in or about November 2021.  HEATHER DIERNA then mailed the individual fictitious invoices from the Rochester, New York area to Victim Companies.

10.     In or about February 2021, T.H. joined the conspiracy.  Fictitious invoices in the names of his company, Easton Chemicals, were mailed to Victim Companies until in or about May 2021.

11.     In or about July 2021, SCARANTINO joined the conspiracy.  Fictitious invoices in name of SCARANTINO's company, Direct Chemicals, were mailed in bulk from Florida to SCARANTINO in California until in or about November 2021.  SCARANTINO then mailed the individual fictitious invoices from California to Victim Companies.

12.     In or about May 2021, Bryan Lantry joined the conspiracy.  Fictitious invoices in the names of his companies, Safety Supply and Union Gloves, were mailed to thousands of Victim Companies until in or about November 2021.

13.     In or about August 2021, S.D. joined the conspiracy.  His companies, Wholesale Chem Supplies LLC and Five Star Warehouse LLC, were used in an attempt to conceal the fraud after Victim Companies paid the fictitious invoices.

***Large Companies Targeted***

14.     The defendants targeted large companies (the Victim Companies) located all over the United States to send fictitious invoices because it was less likely, especially during the COVID-19 pandemic, that such companies' account payable departments would question (a) whether another of the companies' departments had in fact previously ordered and received the products listed on the fictitious invoices, and (b) the relatively small amounts owed on the fictitious invoices. The defendants identified the Victim Companies through the purchase of mailing lists.

***Design of the Fictitious Invoices***

15.     While intending that the fictitious invoices look exactly like legitimate invoices, the defendants placed in hard-to-find places statements, usually on the second page, (a) that the documents were merely "solicitations" to order product, and (b) that there was no obligation to pay the amounts listed on the fictitious invoices. Below are examples from of such documents from each of the Sham Companies:

### a. *North Atlantic Supply*



**North Atlantic Supply Company**
info@NorthAtlanticSupplyCompany.com
250 Mill Street Rochester, NY. 14614
(888) 30-NORTH

N.A.S.C.

DATE: 3/12/2021
I.D. # NA-21011

TO:

POSTED

Sarasota FL 34240
(941) 488-7374

*100620*

| ITEMIZED ORDER FORM / QUOTE | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| Concentrated Cleaner and Degreaser | 1 | $579.99 | $579.99 |
| Shipping | 1 | $58.89 | $58.89 |
| Discount (Code:50OFF2021) | 1 | ($50.00) | ($50.00) |
| ADD ADDITIONAL ITEMS BELOW THIS LINE | | | |
| MARCH SALES TAX | | | |
| | SUBTOTAL | | 588.88 |
| | TAX | | - |
| YOUR BUSINESS IS APPRECIATED | TOTAL | $ | 588.88 |

WE DO NOT EXPORT TO CANADA

CHECKS SHOULD BE MAILED TO CORPORATE OFFICE BELOW

NorthAtlanticSupplyCompany.com

TO:

Sarasota FL 34240

DATE: 3/12/2021
ID #: NA-21011
ENCLOSED TOTAL:

**MAILING ADDRESS:**

**North Atlantic Supply Company**
250 Mill Street
Rochester, NY. 14614
(888) 30-NORTH

| DEGREASERS | | |
|---|---|---|
| BEAST | CONCENTRATED, HEAVY-DUTY DEGREASER | KT-25 |
| BLAST | HIGH-STRENGTH, CITRUS FOAM DEGREASER | KB-2366 |
| ENVIRODEBOLT | SOY-BASED TAR AND ASPHALT REMOVER | KB-96C |
| CITRA-BOLT | FAST DRY CITRUS ELECTRICAL CLEANER | KB-776 |
| CITRA-CRYSTALS | CITRUS DEGREASER POWDER | KB-172E |
| D-SCALE | INHIBITED ACID DETERGENT/CONCRETE CLEANER | KE-116 |
| ECO-ZYME | ECO-FRIENDLY ENZYME DEGREASER | KE-105ECO |
| BACKETTE | CONCRETE CLEANER - ENZYME POWDER | BAEPRETE |
| SAFETYSCORE | SAFETY SOLVENT ELECTRICAL CLEANER | KE-206A |
| CITRAMOVE | CITRUS ELECTRICAL EQUIPMENT DEGREASER | KB-00EVE |
| CHEMICIDE B/S | FOAMING OVEN & GRILL CLEANER | KF-92KD |
| PORTION DOS | DEGREASER PORTION CONTROL PACKETS | PORTICIDE |

| DISINFECTANTS | | |
|---|---|---|
| CITRA-SHIELD | CITRUS DISINFECTANT SPRAY | KB-75 |
| SHIELD | DISINFECTANT FOAM CLEANER | FE-264 |
| SHIELD-Q | LIQUID SPRAY DISINFECTANT | TA |
| SHIELD-Q CITRUS | DISINFECTANT CITRUS CONCENTRATE | FE-164F |
| SHIELD-Q LEMON | DISINFECTANT LEMON CONCENTRATE | FE-164FL |
| SHIELD-Q PINE | DISINFECTANT PINE CONCENTRATE | KE-164PV |
| SHIELD ULTRA | HOSPITAL GRADE DISINFECTANT | KB-57H |
| BISCIDE | ULTRA DISINFECTANT WIPES | BISCIDE |
| CLEARAMELON | JANCO ACID BOWL CLEANER | U-CLEARAMELON |
| PORT PDD | PORTION DISINFECTANT PACKETS | PORTPDD |
| PUNCH-O-FIVE | CITRUS DISINFECTANT POSOLE | MF-163CE |
| TUFF STUFF | NON-ACID BOWL CLEANER | TUFF STUFF |
| WHITE DIAMOND | 70% ACID BOWL CLEANER | WHITE DIAMOND |
| WIPE OUT | TABLETS, KILLS C-DIFF | WIPE OUT |

| DRAIN AND GREASE TRAP | | |
|---|---|---|
| BIODITIVE | BIOSOLVENT ENZYME BLOCKS | KE-99BIO |
| BLAST OUT | NON-ACID DRAIN OPENER | BLAST OUT |
| BLASTER-X | ACID URINAL OPENER/DESCALER | KF-174BX |
| BLITZ | NON-ACID URINAL OPENER | BLITZ |
| DISSOLVE | CITRUS GREASE TRAP OPENER | DISSOLVE |
| DRAIN POWER | SULFURIC ACID DRAIN OPENER | DRAIN POWER |
| BEAST SEAL | URINAL / DRAIN ODOR SEAL | DRAIN SEAL |
| LIQUID-B | DYE LIQUID ENZYMES | KF-164B |
| LIQUID-N CHERRY | HIGH COUNT LIQUID ENZYMES | KE-165NCHE |
| LIQUID-PV CITRUS | HIGH COUNT LIQUID ENZYMES | KB-165PCT |
| FLT-ZYME | DRAIN / FRUIT FLY ELIMINATOR | FLT-ZYME |
| HYDRO-BEAST | GREASE TRAP DEEP CLEANER/OPENER | KE-166HYD |
| POWDER-ZYME | POWDERED BACTERIAL ENZYMES | KB-39 |
| SLUDGE-N | LIQUID ENZYME DRAIN DEODORIZER | SLUDGE-N |

**AUTOMATIC DISPENSING SYSTEMS**

| | | |
|---|---|---|
| PRO DRAIN CHIEF (HIGH SPEED) | DRAIN/GREASE TRAP AUTOMATIC DRIP SYSTEM | PRODRAIN |
| PRO DRAIN CHIEF (LOW SPEED) | DRAIN/GREASE TRAP AUTOMATIC DRIP SYSTEM | PRODRAINLS |
| PRO BATTERY DRAIN CHIEF | DRAIN/GREASE TRAP AUTOMATIC DRIP SYSTEM | PRODRAINB |
| PRO DRAIN CHIEF PLUS | ADVANCED AUTOMATIC DRIP SYSTEM | PRODRAINA |

| DUMPSTER AND TRASH CHUTE | | |
|---|---|---|
| **AEROSOLS** | | |
| BLAST | DUMPSTER CLEANER & DEODORIZER | KE-0044 |
| PUNCH - MINT TEA | TRASH ROOM ODOR FOGGER | KE-15 MT |
| PUNCH - BUG BOMB | INDUSTRIAL INSECT FOGGER | KB-90EU |
| **GRANULES** | | |
| DUMPSTER DAISY | ODOR GRANULES & INSECT REPELLENT | DUMPSTER-D |
| DUMPSTER-C | ODOR GRANULES & INSECT REPELLENT | DUMPSTER-C |
| PFO GRANULES | CHERRY DEODORIZING GRANULES | KF-151 |
| SCENT-BLOCK | HEAVY DUTY DEODORANT BLOCK | KE-1580 |
| **LIQUID SOLUTIONS** | | |
| CITRA-CIDE | ALL NATURAL INSECTICIDE LIQUID | KE-164A |
| ENZO-N - CHERRY | HIGH COUNT LIQUID ENZYMES | KE-165NCHE |
| ENZO-PV CITRUS | HIGH COUNT LIQUID ENZYMES | KF-164PCT |
| ODOR-OUT B | CONCENTRATED LIQUID DEODORIZER | KE-LTT |
| ODOR-OUT H | OIL-BASE LIQUID DEODORIZER | KE-SSL |
| SHARPSHOOTER | TRASH CHUTE CLEANER/DEODORIZER | PE-5249D |
| **MISTERS & APPLICATORS** | | |
| ULTIMATE MISTER | DUMPSTER/CHUTE AUTO MISTING SYSTEM | AROMAX |
| HOSE CONNECT SPRAYER | FOAMING HOSE-CONNECT SPRAYER | FOSTER1 |
| PUMP SPRAYER1 | 1 GALLON PUMP SPRAYER | POLY1 |
| PUMP SPRAYER2 | 2 GALLON PUMP SPRAYER | POLY2 |
| PUMP SPRAYER3 | FOAMING PUMP SPRAYER (2 GAL) | POLY3 |



**North Atlantic Supply Company**
250 Mill Street
Rochester, NY. 14614
(888) 30-NORTH

Visit NorthAtlanticSupplyCompany.com for more information about our products and services. To place an order please contact your sales representative directly.

North Atlantic Supply Company is proud to offer most products in one, five, fifty, or two hundred and fifty gallon containers. Call (877) 80-NORTH or visit NorthAtlanticSupplyCompany.com to place an order or request a quote!

STEM CLEANERS, WEED KILLERS, INDUSTRIAL CLEANER,

DRAIN OPENERS, DISINFECTANTS, AUTOMOTIVE, ODOR

CONTROL, SOLVENT BASED CLEANERS, ALL NATURAL

This is a solicitation for the order of goods or services, or both, and not a bill, invoice, or statement of account due. You are under no obligation to make any payments on account of this offer unless you accept this offer.

We proudly serve the following industries and more:

Manufacturing

Food Industry

Chemicals / Fertilizer

Pet Food /Animal

Feed Minerals / Building Materials

Seed and Grain Pharmaceuticals

Automotive



North Atlantic Supply Company       (888) 30-NORTH
250 Mill Street
Rochester, NY. 14614    www.NorthAtlanticSupplyCompany.com

**b.** _Nationwide Chemicals_

ORDER FORM

## Nationwide Chemicals
777 S. Flagler Dr. Suite 800 West Tower
West Palm Beach, FL 33401
(866) 204-3623
NationwideChemicals.com

DATE:          3/9/2021
SALES ID #:    REF-10391

**MAIL TO ADDRESS:**

Wolf Creek MT 59648

**SHIP TO ADDRESS:**

Wolf Creek MT 59648
(406)

| DATE | SALES ID # | SHIP |
|------|------------|------|
| 3/9/2021 | REF-10391 | Fed Ex |

| PRODUCT | DESCRIPTION | QUANTITY | UNIT PRICE | QUOTED TOTAL |
|---------|-------------|----------|------------|--------------|
| SHOP CLEAN - 1104 | MULTI-PURPOSE CONCENTRATE CLEANER AND DEGREASER: CAR WASH / TRUCK WASH / SHOP WASH | 4 | 129.95 | 519.80 |
| Freight | Standard Shipping | 1 | 58.59 | 58.59 |

|  |  |
|--|--|
| SUBTOTAL | $    578.39 |
| TAX RATE | 0.000% |
| TAX | $      - |
| S & H | $      - |
| TOTAL | $    578.39 |

**SPECIAL INSTRUCTIONS**

ASK ABOUT OUR CUSTOM BLENDED CLEANING SUPPLIES.

Make all checks payable to
**Nationwide Chemicals**

*Thank You For Your Business!*

Please include your sales I.D. number # on your check/order or detach the portion below.

Your Company:

Wolf Creek MT 59648
(406)

Remittance:
**Nationwide Chemicals**
777 S. Flagler Dr. Suite 800 West Tower
West Palm Beach, FL 33401
(866) 204-3623

DATE:          3/9/2021
SALES ID #:    REF-10391

VISIT NATIONWIDECHEMICALS.COM FOR ALL YOUR CLEANING NEEDS!

11

# NATIONWIDE CHEMICALS

FROM AGRICULTURE TO SHOP, WE HAVE A GREEN SOLUTION THAT IS RIGHT FOR YOU. TO LEARN MORE CALL (866) 204-2623

Degreaser-IT offers a special blend of tough cleaning agents formulated to remove silt and wax from walls, fixtures, sealed wood, painted surfaces, yet gentle enough to be used as a multi luse cleaner. It also removes heavy contaminations. SKU: Deg-IT110

Citrus clean is a non-butyl cleaner, degreaser and deodorant for use with power washer, scrubbers mopt buckets, and spray-and-wipe applications. This advanced formula quickly emulsifies soil types such as animal fats and petroleum greases. SKU: CitClean105

Now infused with SeniCon indoor counteracting technology, Day1 Clean cuts through dirt, grime, AND odors! Leaves no streaks, haze, or residues. Low-foam and concentrated, it works best mixed 1-3 ounces per gallon. Apply with an automatic scrubber or mop for terrific results. SKU: Day103

An Environmentally safe cleaner formulated for everything from tough degreasing to mild cleaning, this industrial-strength concentrate holds grease, dirt, grime and in suspension for every removal and rinsing. Industrial Clean is always friendly to earth while getting the job done. SKU: Indust118

Get the Purple EnergyHouse that handles everything from heavy soil to tough shipping jobs. The formula eradicates rust, oil, and grease, yet contains no damaging solvents. Not for use on vinyl-type flooring or where E.P.A. prohibits. SKU: PurEn177

This is a solicitation for the order of goods or services, or both, and not a bill, invoice, or statement of account due. You are under no obligation to make any payments on account of this account of this offer unless you accept this offer.

# ALL YOUR PPE NEEEDS



## LEVEL 2
## 50 COUNT BOX
## $66⁵⁰

## NITRILE
## 100 COUNT BOX
## $10⁹⁹

## SPRAY & PAPER
## 32oz BOTTLE   ROLL
## $5⁹⁹   $2⁹⁹

c. **_Safety Supply_**





| DATE | 6/30/21 |
|---|---|
| I.D. NUMBER | 725704 |

For Questions Call
1 (877) 744-9155
or visit us at
safetysupplycenter.com

Ship To:


Clarence Center NY 14032

Clarence Center NY 14032

**Itemized Products**

| Product Code | Description | Quantity | Units | Rate |
|---|---|---|---|---|
| G2653B30 | Disposable Gloves, Latex Free, Powder Free, Polyethylene | 500 | PK | $ 389.00 |
| G3433923 | Safety Glasses, Clear Full Frame | 24 | EA | $ 210.50 |
| G1621192 | Vented Bump Cap, Yellow, Pinlock, Ball | 12 | EA | $ 459.00 |
| G1232919 | U-Block Safety Vest Class 2, Yellow/Sm | 10 | EA | $ 389.00 |
| G9735404 | Uncorded Ear Plugs, Bell Shape 33dB | 200 | EA | $ 215.50 |
| DISCOUNT500 | FreeShipping FedEx: FREESHIPOVER500 | 1 | SHP | $ 0 |

| SALES PERSON | REQUISITIONER | SHIPPING VIA |
|---|---|---|
| Jason B | | United Parcel Service |

Safety Supply Center provides unique capabilities and resources that allow us to acquire one of the best
reputations for quality and service in the industry. With over 1000 products to offer, we are confident that we are
your one-stop-shop for all PPE-related things. Our goal is to make safe and comfortable work environments with
our products. It is crucial to be OSHA and safety law compliant; we're here to help. All personal protective
equipment can be ordered in bulk and customized to have your company logo on it. For and further questions or
to request another quote contact our sales team. This is a solicitation for the order of goods or service, or both,
not a bill, invoice, or statement of account due. You are under no obligation to make any payment on account of
this offer unless you accept this offer. In an equal opportunity, employour, we strive for 500 percent customer
satisfaction. Our focus is to leave a positive impact on all aspects of society through our products and team.

| | | |
|---|---|---|
| SUBTOTAL | $ | 1763.00 |
| SHIPPING | | Free |
| TAX | | - |
| TOTAL | | $ 1,763.00 |

1. All products insured upon delivery

2. Ordres over $500 qualifiy for free shipping

3. Express shipping availble upon request & additional quoting

---

PLEASE MAIL CHECKS TO OUR CORPORATE OFFICE BELOW

---

**Customer Info:**

Clarence Center NY 14032

**Payment Information:**
Safety Supply Center
150 E Palmetto Park Rd STE 800
Boca Raton, FL 33432

| Order ID: | 725704 |
|---|---|
| Date: | 6/30/21 |
| Shipping: | UPS Standard |
| Total | $1,763.00 |



AMERICAN OWNED AND OPERATED

YOUR BUSINESS IS APPRECIATED

FOR W-9 REQUEST EMAIL AP@SAFETYSUPPLYCENTER.COM

16.     When questioned by any of the Victim Companies or government agencies about the legitimacy of the fictitious invoices, the defendants would falsely claim that the intended purpose of the documents was merely to "solicit" future business from the Victim Companies.

### *Victim Companies Tricked into Paying the Fictitious Invoices*

17.     As a result of the scheme and conspiracy, from the many thousands of Victim Companies that received fictitious invoices, approximately 5,458 of such Victim Companies were tricked and defrauded into believing that they had received a legitimate invoice for products that they had previously ordered and received from the Sham Companies.  Many of such Victim Companies were tricked and defrauded more than once.

18.     The approximately 5,458 Victim Companies that were tricked and defrauded into paying the fictitious invoices made a total of 8,613 payments to the Shame Companies. Many of such payments were made by the mailing of checks to the Sham Companies to Florida or Rochester, New York, while  in a few cases, the Victim Companies paid the fictitious invoices by electronic payment.

19.     Checks from the Victim Companies that were mailed to Rochester, New York were picked up by HEATHER DIERNA and deposited by her into bank accounts in the names of North Atlantic Supply and Top Tier Chemical.

20.     The total amount paid by the approximately 5,458 Victim Companies to the Sham Companies was approximately $8,010,543.50.  From this amount, approximately $4,015,741.03 was transferred to the ringleaders, ENGLER and ALEC DIERNA, or to

companies owned by them, including, Prince Venture Capital LLC, Engler Holdings LLC, and Dierna Enterprise LLC.

### *Victim Companies Not Tricked into Paying The Fictitious Invoices*

21.     The defendants set up a call center to handle the thousands of calls and emails that the Sham Companies would receive from Victim Companies who, while not being immediately tricked into paying the fictitious invoices, had questions about why they had received what they believed were invoices (not "solicitations").

22.     At the call center, fictitious employee names from the Sham Companies were used to provide false statements and false explanations to respond to inquiries from Victim Companies or government agencies.  For example, Victim Companies who inquired about the fictitious invoices would be told that some unknown employee from the Victim Companies had requested that the Sham Companies provide a quote (or solicitation) for the products, when in fact, the defendants knew that the Victim Companies had never requested a quote.

23.     Below is an example of a script used by the defendants or their employees at the call center when the Victim Companies contacted the Sham Companies to inquire about what the Victim Companies believed was an invoice:

24.     As depicted in the first line of the script, the defendants, who were anticipating that the Victim Companies who were not immediately tricked into paying the fictitious invoices would still believe that what they had received was an "invoice", would not advise the Victim Companies that the document was only a "solicitation".

25.     As depicted later in the script, even though the defendants knew that the Victim Companies had never requested any products or quotes for such products, the defendants and their employees would respond to the question *"Who requested it"* by falsely stating "*Let me look in the notes for you…(pause your checking the notes) I apologize our sales team failed to collect that information"* and it *"looks like it was requested _____ (insert date)"*.

26.     When the Victim Companies requested that the Sham Companies provide an IRS Form W-9 before a payment could be made, the defendants did not advise the Victim Companies that the document they received was not an invoice, and the defendants used fictitious employee names when communicating with the Victim Companies and when signing the Form W-9s.  For Example, as depicted below, a victim company emailed Safety Supply stating "I received invoice 759776 in the mail. Could you please send me your W9." In the response by Safety Supply, the victim company was not corrected nor  informed that the mailing was a solicitation and not an invoice.

16



Re: W9 Request and address changed.

HL   Heather Lapi <ap@safetysupplycenter.com>
     To ○ Jillian Moise

📄 W-9_SSC.pdf
   89 KB

Hello,

Your W-9 request has been processed. Please see attached file.

The address has been updated! Thank you!

Have a great day!

Customer Service
Safety Supply Center
150 E Palmetto Park Rd #800
Boca Raton, FL 33432

> On Oct 14, 2021, at 2:37 PM, Jillian Moise <Jillian_Moise@nsmech.com> wrote:
>
> Hello,
> I received invoice 759776 in the mail. Could you please send me your W9 so I can put you in our system?
> Also, you have our wrong address on file. Our updated address is:
> 72 Jonspin Rd
> Wilmington MA 01887
> Future invoices can also be emailed to: ap@nsmech.com
> Thanks!

### *Shipping Cheap Product to Cover Up the Fraud*

27.     After receiving a payment from the Victim Companies who were tricked into paying the fictitious invoices, the defendants attempted to cover up their fraud by having delivered to such Victim Companies inexpensive products worth substantially less than what the Victim Companies had been charged.

17

28.     For most of the Sham Companies, the Victim Companies usually received one box containing four 1-gallon jugs of cheap and inexpensive cleaner/degreaser solution worth approximately $20 for which they were charged more than $560.

29.     For Safety Supply and Union Gloves, the Victim Companies received cheap and inexpensive personal protection equipment ("PPE") products.  For example, the Victim Companies would receive a 100-pack of disposable gloves worth approximately $12 for which they charged the Victim Companies $390.

30.     In addition to attempting to cover up their fraud by delivering cheap cleaner/degreaser or PPE products to the Victim Companies, the defendants made it impossible for the Victim Companies to connect and link the delivery of such products to the Victim Companies prior payment of the fictitious invoices, by doing, among other things, the following:

    a.   The products were not delivered to the Victim Companies until several weeks or months after the Victim Companies had been tricked into paying the fraudulent invoices.  For example, one of the Victim Companies made its payment to Hi-Tech Industrial Chemical on or about December 17, 2020, but the company did not receive the cheap cleaner/degreaser products until on or about March 12, 2021.

    b.   The products when delivered did not include a copy of the document appearing to be a legitimate invoice nor any other shipping document that would have connected the products to the fictitious invoice which the Victim Companies had paid,

    c.   The products when delivered did not include any information identifying that the products had been purchased from the Sham Companies.

18

d. Oftentimes, the only paperwork included with the shipment of cleaner/degreaser products was a sheet of paper indicating the contents were a "sample", which would cause the Victim Companies to believe that what they received was an unsolicited sample of products that they could purchase in the future and which would result in such Victim Companies not connecting the "sample" products to the fictitious invoices which the Victim Companies had been tricked into paying.  Below is an example of a Pick Ticket included with a shipment of cleaner/degreaser products received by a Victim Company which indicates the shipment contains merely "sample product":



e.  The company name on the return address labels when the cleaner/degreaser products were delivered contained the name of companies other than the Sham Companies, that is, either Simple Pro Solutions or Wholesale Chem Supplies.  Below are examples of such labels:



     f.  The PPE products from Safety Supply and Union Gloves when delivered contained fraudulent return address information on the shipping labels that contained (i) a fictitious person's name, "Xi Chin", (ii) a different business name, "Five Star Warehouse", and (iii) made-up phone numbers that belonged to a teenage girl in Florida and a woman in the Rochester, New York area, both of whom received numerous phone calls from various Victim Companies inquiring about the products that the Victim Companies had just received which they believed they had never ordered. Below is an example of such a shipping label with fraudulent return address information:



31.      Despite the defendants' contention that the documents they sent to the Victim Companies were not invoices but were merely "solicitations" or "quotes" to find new customers, the defendants, after receiving payments from the Victim Companies, who thus would have responded favorably to the documents if in fact such documents were merely "solicitations" or "quotes", never again attempted to contact the Victim Companies (a) to sell additional products or to develop customer relationships, both of which would have been expected as normal business practices if in fact the Victim Companies had responded favorably to legitimate "solicitations" or "quotes", and (b) because any such contact would have alerted the Victim Companies that they had been previously tricked into paying the fictitious invoices.

## MEANS BY WHICH THE OBJECT OF THE
## CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was accomplished through the following means and methods:

### *Victim Companies Nationwide*

32.     Between in or about January 2019, and in or about November 2021, documents that the defendants intended to trick the Victim Companies into believing was a legitimate invoice from the Sham Companies for products that the Victim Companies had previously ordered and received were mailed from Florida and Rochester, New York to many thousands of Victim Companies throughout the United States

33.     The Victim Companies that were tricked into paying the fictitious invoices would mail a check to either Florida or Rochester, or in a few cases, make an electric payment.

34.     Between in or about the dates set forth below, the approximate number of Victim Companies set forth below (a) received fictitious invoices by mail in the names of the Sham Companies set forth below, and (b) were tricked into making payments to such Sham Companies in the approximate amounts set forth below, by either mailing checks or electronic payments:

| SHAM COMPANIES | DATES OF PAYMENT OF FICTITIOUS INVOICES | APPROXIMATE NUMBER OF PAYMENTS BY THE APPROXIMATELY 5,458 VICTIM COMPANIES | TOTAL APPROXIMATE AMOUNT OF PAYMENTS |
|---|---|---|---|
| Office Outlet | 01/2019-07/2021 | 170 | $100,194.90 |
| America's Best | 08/2019-09/2020 | 433 | $254,097.12 |
| United Chemicals | 08/2020-04/2021 | 880 | $524,713.12 |
| Hi-Tech Industrial | 11/2020-04/2021 | 425 | $255,822.78 |
| Nationwide Chemical | 02/2021-09/2021 | 1,145 | $822,583.46 |
| Easton Chemical | 04/2021-05/2021 | 128 | $79,328.86 |
| Direct Chemical | 07/2021-11/2021 | 873 | $861,268.66 |
| North Atlantic Supply | 02/2021-09/2021 | 1,805 | $1,385,442.67 |
| Top Tier Chemicals | 07/2021-11/2021 | 1,265 | $1,257,380.40 |
| Safety Supply | 05/2021-04/2022 | 1,210 | $2,188,462.02 |
| Union Gloves | 10/2021-05/2022 | 279 | $281,249.50 |
| *TOTAL (approximate)* | | *8,613* | *$8,010,543.50* |

35.     The Victim Companies' payments totaled approximately $8,010,543.50 were deposited into bank accounts in the names of the Sham Companies.  From this amount, approximately $4,015,741.03 was transferred to bank accounts belonging to ENGLER and ALEC DIERNA, or to their companies, Prince Venture Capital LLC, Engler Holdings LLC, and Dierna Enterprise LLC.

36.     After receiving a payment from the Victim Companies, inexpensive cleaner/degreaser or PPE products, worth substantially less than what the Victim Companies had been charged, were delivered and shipped by private commercial carrier to the Victim Companies with no identifying information or documentation connecting such deliveries to the Sham Companies, and with misleading return address information on the shipping labels.

### *Victim Companies in Western District of New York*

37.     On or about the dates set forth below, the Victim Companies identified below, received by the United States Postal Service to the places set forth below in the Western District of New York, fictitious invoices in the names of the Sham Companies identified below by initials, which caused the Victim Companies to mail checks in the amounts set forth below from the Western District of New York to the Sham Companies on or about the dates set forth below:

| VICTIM COMPANY | SHAM COMPANY | DATE INVOICE MAILED | CHECK AMOUNT PAYING INVOICE | PLACES INVOICE MAILED TO | DATE CHECK MAILED FROM WDNY |
|---|---|---|---|---|---|
| VC 1 | ABC | 05/27/2020 | $588.62 | Buffalo, NY | 6/30/2020 |
| VC 2 | NASC | 04/02/2021 | $585.78 | Henrietta, NY | 04/13/2021 |
| VC 3 | NASC | 04/02/2021 | $585.78 | Lakewood, NY | 05/10/2021 |
| VC 4 | NASC | 04/02/2021 | $585.78 | Brockport, NY | 05/12/2021 |
| VC 5 | NWC | 04/22/2021 | $588.69 | Rochester, NY | 05/05/2021 |
| VC 6 | NWC | 06/10/2021 | $994.66 | Avon, NY | 07/15/2021 |
| VC 7 | NWC | 06/10/2021 | $994.66 | Tonawanda, NY | 07/12/2021 |
| VC 8 | NWC | 06/24/2021 | $3,970.24 | Rochester, NY | 07/25/2021 |
| VC 9 | NWC | 06/03/2021 | $993.76 | Niagara Falls, NY | 07/15/2021 |
| VC 10 | NWC | 06/24/2021 | $984.69 | Henrietta, NY | 08/20/2021 |
| VC 11 | SS | 06/15/2021 | $1,924.79 | Clarence Center, NY | 06/22/2021 |
| VC 11 | SS | 06/30/2021 | $1,763.00 | Clarence Center, NY | 07/09/2021 |

| VICTIM COMPANY | SHAM COMPANY | DATE INVOICE MAILED | CHECK AMOUNT PAYING INVOICE | PLACES INVOICE MAILED TO | DATE CHECK MAILED FROM WDNY |
|---|---|---|---|---|---|
| VC 12 | SS | 07/14/2021 | $1,877.60 | Rochester, NY | 07/24/2021 |
| VC 13 | SS | 07/28/2021 | $1,762.00 | West Seneca, NY | 08/13/2021 |
| VC 14 | SS | 08/03/2021 | $1,764.00 | Olean, NY | 09/02/2021 |
| VC 15 | SS | 08/03/2021 | $1,764.00 | Williamsville, NY | 09/08/2021 |
| VC 16 | SS | 09/01/2021 | $1,778.00 | Rochester, NY | 09/10/2021 |
| VC 17 | SS | 09/01/2021 | $1,778.00 | LeRoy, NY | 10/12/2021 |
| VC 18 | SS | 09/14/2021 | $1,786.00 | Kenmore, NY | 11/05/2021 |
| VC 19 | SS | 09/14/2021 | $1,786.00 | Scottsville, NY | 11/19/2021 |
| VC 20 | SS | 09/21/2021 | $1,783.00 | Buffalo, NY | 10/08/2021 |
| VC 21 | SS | 09/28/2021 | $1,781.00 | Lancaster, NY | 09/30/2021 |
| VC 22 | SS | 10/05/2021 | $1,787.00 | Victor, NY | 10/18/2021 |
| VC 23 | SS | 10/12/2021 | $1,789.00 | Rochester, NY | 11/05/2021 |
| VC 24 | SS | 10/26/2021 | $ 978.00 | Rochester, NY | 11/04/2021 |
| VC 25 | TTC | 08/16/2021 | $993.31 | Andover, NY | 08/25/2021 |

38.    On or about the dates set forth below, the Victim Companies set forth below, received by the United States Postal Service or private commercial carrier in the town or city set forth below in the Western District of New York, inexpensive cleaner/degreaser or PPE products:

| VICTIM COMPANY | DATE PRODUCTS MAILED/SHIPPED TO VICTIM COMPANIES | PLACE PRODUCTS MAILED/SHIPPED TO IN WDNY |
|---|---|---|
| VC 3 | 07/09/2021 | Lakewood, NY |
| VC 4 | 07/27/2021 | Brockport, NY |
| VC 5 | 03/01/2022 | Henrietta, NY |
| VC 6 | 08/13/2021 | Avon, NY |
| VC 7 | 09/02/2021 | Tonawanda, NY |
| VC 10 | 10/26/2021 | Henrietta, NY |
| VC 11 | 08/31/2021 | Clarence Center, NY |
| VC 11 | 09/01/2021 | Clarence Center, NY |

| VICTIM COMPANY | DATE PRODUCTS MAILED/SHIPPED TO VICTIM COMPANIES | PLACE PRODUCTS MAILED/SHIPPED TO IN WDNY |
|---|---|---|
| VC 12 | 01/12/2022 | Rochester, NY |
| VC 13 | 08/25/2021 | West Seneca, NY |
| VC 14 | 10/28/2021 | Olean, NY |
| VC 15 | 11/11/2021 | Williamsville, NY |
| VC 16 | 11/09/2021 | Rochester, NY |
| VC 17 | 12/09/2021 | LeRoy, NY |
| VC 18 | 01/26/2022 | Kenmore, NY |
| VC 19 | 12/09/2021 | Scottsville, NY |
| VC 20 | 01/26/2022 | Buffalo, NY |
| VC 21 | 01/26/2022 | Lancaster, NY |
| VC 22 | 12/09/2021 | Victor, NY |
| VC 23 | 12/15/2021 | Rochester, NY |
| VC 24 | 12/20/2021 | Rochester, NY |

**All in violation of Title 18, United States Code, Section 1349.**

## COUNT 2
### (Mail Fraud)
*America's Best – Fictitious Invoices Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1 and 51 are incorporated herein by reference.

2.      On or about May 27, 2020, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER** and **ALEC DIERNA,** did devise, and intend to devise, a scheme and artifice to defraud a Victim Company identified as VC 1, and to obtain money and property from VC 1 by means of false and fraudulent pretenses, representations, and promises.

3.      Between in or about February 2021, and in or about November 2021, in the Western District of New York, for the purpose of executing and attempting to execute the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, deposited and caused to be deposited, and placed in an authorized depository for mail, to be sent and delivered by the Postal Service the following matter: a fictitious invoice for $588.62 in the name of ALEC DIENRA's company, America's best.

**All in violation of Title 18, United States Code, Sections 1341 and 2.**


## COUNT 3
**(Mail Fraud)**
*America's Best – Victim Company Checks Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1, 2 and 51 are incorporated herein by reference.

2.      On or about May 27, 2020, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER** and **ALEC DIERNA,** did devise, and intend to devise, a scheme and artifice to defraud a Victim Company identified as VC 1, and to obtain money and property from VC 1 by means of false and fraudulent pretenses, representations, and promises.

3.      Between in or about February 2021, and in or about November 2021, in the Western District of New York, for the purpose of executing and attempting to execute the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, and  caused to be deposited, and placed in an authorized depository for

mail,  to be sent and delivered by the Postal Service, the following matter: a check from the VC 1 in the amount of $588.62 to ALEC DIERNA's company, America Best.

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## COUNT 4
### (Mail Fraud)
### *North Atlantic Supply – Fictitious Invoices Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1 and 51 are incorporated herein by reference.

2.      Between in or about February 2021, and in or about November 2021, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER, ALEC DIERNA, TOMMY LEE COBURN** and **HEATHER DIERNA**, did devise, and intend to devise, a scheme and artifice to defraud Victim Companies, and to obtain money and property from Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      Between in or about February 2021, and in or about November 2021, in the Western District of New York, for the purpose of executing and attempting to execute the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, and deposited and caused to be deposited, and placed in an authorized depository for mail,  to be sent and delivered by the Postal Service, the following matter: fictitious invoices in the name of COBURN's company, North Atlantic Supply.

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

**COUNT 5**
**(Mail Fraud)**
*North Atlantic Supply – Victim Checks Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1, 4 and 51 are incorporated herein by reference.

2.      Between in or about March 2021, and in or about November 2021, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER, ALEC DIERNA, TOMMY LEE COBURN** and **HEATHER DIERNA,** did devise, and intend to devise, a scheme and artifice to defraud the Victim Companies, and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      Between in or about March 2021, and in or about November 2021, for the purpose of executing, and attempting to execute, the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, and caused to be deposited, and placed in an authorized depository for mail, to be sent and delivered by the Postal Service, the following matter: checks from the Victim Companies to COBURN's company, North Atlantic Supply.

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

**COUNTS 6 and 7**
**(Mail Fraud)**
*North Atlantic Supply – Cheap Product Shipped*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1, 4, 5 and 51 are incorporated herein by reference.

2.      Between in or about October 2020, and in or about January 2022, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER, ALEC DIERNA** and **TOMMY LEE COBURN**, did devise, and intend to devise, a scheme and artifice to defraud Victim Companies, and to obtain money and property from Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      On or about the dates set forth below, for the purpose of executing, and attempting to execute, the scheme and artifice, the defendants placed in any post office and authorized depository mail matter to be sent and delivered by the Postal Service; deposited and caused to be deposited to be sent and delivered by private and commercial interstate carrier; and knowingly caused to be delivered by mail and private and commercial interstate carrier according to the direction thereon the following matter: inexpensive cleaner/degreaser products to Victim Companies who made payment to COBURN's company, North Atlantic Supply:

| COUNT | VICTIM COMPANY | DATE PRODUCTS MAILED/SHIPPED TO VICTIM COMPANIES | PLACE PRODUCTS MAILED/SHIPPED TO IN WDNY |
|-------|----------------|-----------------------------------------------|------------------------------------------|
| 6 | VC 3 | 07/09/2021 | Lakewood, NY |
| 7 | VC 4 | 07/27/2021 | Brockport, NY |

**All in violation of Title 18, United States Code, Sections 1341 and 2**

## COUNT 8
### (Mail Fraud)
*Top Tier Chemical – Fictitious Invoices Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1 and 51 are incorporated herein by reference.

2.      Between in or about February 2021, and in or about November 2021, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER, ALEC DIERNA, TOMMY LEE COBURN** and **HEATHER DIERNA**, did devise, and intend to devise, a scheme and artifice to defraud Victim Companies, and to obtain money and property from Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      Between in or about February 2021, and in or about November 2021, in the Western District of New York, for the purpose of executing and attempting to execute the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, and deposited and caused to be deposited, and placed in an authorized depository for mail,  to be sent and delivered by the Postal Service, the following matter: fictitious invoices in the name of COBURN's company, Top Tier Chemical.

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## COUNT 9
### (Mail Fraud)
*Top Tier Chemicals - Victim Checks Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1, 8 and 51 are incorporated herein by reference.

2.      Between in or about March 2021, and in or about November 2021, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER, ALEC DIERNA, TOMMY LEE COBURN** and **HEATHER DIERNA,** did devise, and intend to devise, a scheme and artifice to defraud the Victim Companies, and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      Between in or about March 2021, and in or about November 2021, for the purpose of executing, and attempting to execute, the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, and caused to be deposited, and placed in an authorized depository for mail, to be sent and delivered by the Postal Service, the following matter: checks from the Victim Companies to COBURN's company, Top Tier Chemical.

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

**COUNTS 10 through 16**
**(Mail Fraud)**
*Nationwide Chemicals – Fictitious Invoices and Victim Checks Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1 and 51 are incorporated herein by reference.

2.      Between in or about April 2021, and in or about January 2022, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER, ALEC DIERNA** and **KYLE PAUL EDWARD GIBSON**, did devise, and intend to devise, a scheme and artifice to defraud Victim Companies, and to obtain money and property from Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      On or about the dates set forth below, in the Western District of New York, for the purpose of executing and attempting to execute the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, and deposited and caused to be deposited, and placed in an authorized depository for mail, to be sent and delivered by the Postal Service, the following matter: fictitious invoices in the name of GIBSON's company, Nationwide Chemicals, and checks from the Victim Companies to Nationwide Chemicals:

| COUNT | VICTIM COMPANY | DATE OF INVOICE | AMOUNT INVOICE/ CHECK | TOWN/CITY INVOICE MAILED TO | DATE CHECK MAILED FROM WDNY |
|---|---|---|---|---|---|
| 10 | VC 5 | 04/22/2021 | $588.69 | Rochester, NY | 05/05/2021 |
| 11 | VC 6 | 06/10/2021 | $994.66 | Avon, NY | 07/15/2021 |
| 12 | VC 7 | 06/10/2021 | $994.66 | Tonawanda, NY | 07/12/2021 |

| COUNT | VICTIM COMPANY | DATE OF INVOICE | AMOUNT INVOICE/ CHECK | TOWN/CITY INVOICE MAILED TO | DATE CHECK MAILED FROM WDNY |
|-------|----------------|-----------------|-----------------------|------------------------------|------------------------------|
| 13 | VC 8 | 06/24/2021 | $1,985.24 | Rochester, NY | 07/25/2021 |
| 14 | VC 8 | 06/24/2021 | $1,985.24 | Rochester, NY | NA |
| 15 | VC 9 | 06/03/2021 | $993.76 | Niagara Falls, NY | 07/15/2021 |
| 16 | VC 10 | 06/24/2021 | $984.69 | Henrietta, NY | 08/20/2021 |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## COUNTS 17 through 20
### (Mail Fraud)
*Nationwide Chemicals – Cheap Products Shipped*

**The Grand Jury Further Charges That:**

1.      he allegations in the Introduction and in Count 1, Counts 10 through 16, and 51 are incorporated herein by reference.

2.      Between in or about October 2020, and in or about March 2022, in the Western District of New York, and elsewhere, the defendant, **JOHN ENGLER, ALEC DIERNA** and **KYLE PAUL EDWARD GIBSON**, did devise, and intend to devise, a scheme and artifice to defraud the Victim Companies, and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      On or about the dates set forth below, for the purpose of executing, and attempting to execute, the scheme and artifice, the defendants deposited and caused to be deposited, to be sent and delivered by private and commercial interstate carrier; and knowingly caused to be delivered by mail and private and commercial interstate carrier according to the direction thereon, the following matter:  inexpensive cleaner/degreaser

products to Victim Companies who made payment to GIBSON's company, Nationwide Chemical:

| COUNT | VICTIM COMPANY | DATE PRODUCTS MAILED/SHIPPED TO VICTIM COMPANIES | PLACE PRODUCTS MAILED/SHIPPED TO IN WDNY |
|-------|----------------|--------------------------------------------------|------------------------------------------|
| 17 | VC 5 | 03/01/2022 | Henrietta, NY |
| 18 | VC 6 | 08/13/2021 | Avon, NY |
| 19 | VC 7 | 09/02/2021 | Tonawanda, NY |
| 20 | VC 10 | 10/26/2021 | Henrietta, NY |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

**COUNTS 21 through 35**
**(Mail Fraud)**
*Safety Supply - Fictitious Invoices and Victim Checks Mailed*

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and in Counts 1 and 51 are incorporated herein by reference.

2.      Between in or about May 2021, and in or about July 2022, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER** and **ALEC DIERNA**, along with Bryan Lantry, did devise, and intend to devise, a scheme and artifice to defraud the Victim Companies, and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.      On or about the dates set forth below, in the Western District of New York, for the purpose of executing and attempting to execute the scheme and artifice, the defendants knowingly caused to be delivered by mail according to the direction thereon, and deposited

and caused to be deposited, and placed in an authorized depository for mail, to be sent and delivered by the Postal Service, the following matter: fictitious invoices in the name of Bryan Lantry's company, Safety Supply, and checks from the Victim Companies to Safety Supply:

| COUNT | VICTIM COMPANY | DATE INVOICE MAILED AND AMOUNT | TOWN/CITY INVOICE MAILED TO FROM FLORIDA | DATE CHECK MAILED FROM WDNY TO FLORIDA |
|---|---|---|---|---|
| 21 | VC 11 | 06/15/2021 $1,924.79 | Clarence Center, NY | 06/22/2021 |
| 22 | VC 11 | 06/30/2021 $1,763.00 | Clarence Center, NY | 07/09/2021 |
| 23 | VC 12 | 07/14/2021 $1,877.60 | Rochester, NY | 07/24/2021 |
| 24 | VC 13 | 07/28/2021 $1,762.00 | West Seneca, NY | 08/13/2021 |
| 25 | VC 14 | 08/03/2021 $1,764.00 | Olean, NY | 09/02/2021 |
| 26 | VC 15 | 08/03/2021 $1,764.00 | Williamsville, NY | 09/08/2021 |
| 27 | VC 16 | 09/01/2021 $1,778.00 | Rochester, NY | 09/10/2021 |
| 28 | VC 17 | 09/01/2021 $1,778.00 | LeRoy, NY | 10/12/2021 |
| 29 | VC 18 | 09/14/2021 $1,786.00 | Kenmore, NY | 11/05/2021 |
| 30 | VC 19 | 09/14/2021 $1,786.00 | Scottsville, NY | 11/19/2021 |
| 31 | VC 20 | 09/21/2021 $1,783.00 | Buffalo, NY | 10/08/2021 |
| 32 | VC 21 | 09/28/2021 $1,781.00 | Lancaster, NY | 09/30/2021 |
| 33 | VC 22 | 10/05/2021 $1,787.00 | Victor, NY | 10/18/2021 |
| 34 | VC 23 | 10/12/2021 $1,789.00 | Rochester, NY | 11/05/2021 |
| 35 | VC 24 | 10/26/2021 $978.00 | Rochester, NY | 11/04/2021 |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

<u>**COUNTS 36 through 50**</u>
**(Mail Fraud)**
*Safety Supply – Cheap Product Shipped*

**The Grand Jury Further Charges That:**

1.       The allegations in the Introduction and in Counts 1, 21 through 35, and 51 are incorporated herein by reference.

2.       Between in or about May 2021, and in or about July 2022, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER** and **ALEC DIERNA,** along with Bryan Lantry, did devise, and intend to devise, a scheme and artifice to defraud the Victim Companies, and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises.

3.       On or about the dates set forth below, the defendants, for the purpose of executing, and attempting to execute, the scheme and artifice, placed in any post office and authorized depository mail matter to be sent and delivered by the Postal Service; deposited and caused to be deposited, to be sent and delivered by private and commercial interstate carrier; and knowingly caused to be delivered by mail and private and commercial interstate carrier according to the direction thereon, the following matter:  inexpensive PPE products to Victim Companies who made payment to Bryan Lantry's company, Safety Supply:

| COUNT | VICTIM COMPANY | DATE PRODUCTS MAILED/SHIPPED TO VICTIM COMPANIES | PLACE PRODUCTS MAILED/SHIPPED TO IN WDNY |
|---|---|---|---|
| 36 | VC 11 | 08/31/2021 | Clarence Center, NY |
| 37 | VC 11 | 09/01/2021 | Clarence Center, NY |
| 38 | VC 12 | 01/12/2022 | Rochester, NY |
| 39 | VC 13 | 08/25/2021 | West Seneca, NY |

| COUNT | VICTIM COMPANY | DATE PRODUCTS MAILED/SHIPPED TO VICTIM COMPANIES | PLACE PRODUCTS MAILED/SHIPPED TO IN WDNY |
|---|---|---|---|
| 40 | VC 14 | 10/28/2021 | Olean, NY |
| 41 | VC 15 | 11/11/2021 | Williamsville, NY |
| 42 | VC 16 | 11/09/2021 | Rochester, NY |
| 43 | VC 17 | 12/09/2021 | LeRoy, NY |
| 44 | VC 18 | 01/26/2022 | Kenmore, NY |
| 45 | VC 19 | 12/09/2021 | Scottsville, NY |
| 46 | VC 20 | 01/26/2022 | Buffalo, NY |
| 47 | VC 21 | 01/26/2022 | Lancaster, NY |
| 48 | VC 22 | 12/09/2021 | Victor, NY |
| 49 | VC 23 | 12/15/2021 | Rochester, NY |
| 50 | VC 24 | 12/20/2021 | Rochester, NY |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## COUNT 51
**(Conspiracy to Engage in Money Laundering)**

**The Grand Jury Further Charges That:**

1.      The allegations in the Introduction and Counts 1 through 50 are incorporated herein by reference.

## THE OBJECT OF THE CONSPIRACY

2.      Between in or about October 2020, and in or about January 2022, in the Western District of New York, and elsewhere, the defendants, **JOHN ENGLER, ALEC DIERNA, TOMMY LEE COBURN** and **KYLE PAUL EDWARD GIBSON**, did

38

knowingly, willfully and unlawfully combine, conspire and agree together and with each other, and with other persons both known and unknown to the Grand Jury:

(a)   to knowingly engage in monetary transactions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer and exchange of funds and monetary instruments by, through and to financial institutions engaged in and the activities of which affected interstate and foreign commerce, such property having been derived from specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and knowing that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense, in violation of Title 18, United States Code, Sections 1957 and 2; and

(b)   to knowingly conduct financial transactions affecting interstate commerce, that is, the deposit, withdrawal, transfer and exchange of funds and monetary instruments by, through and to financial institutions engaged in and the activities of which affected interstate and foreign commerce, which represented the proceeds of a specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, with (i) the intent to promote the carrying on of specified unlawful activity, and (ii) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, and that while conducting such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 2.

## MEANS BY WHICH THE OBJECT OF THE
## CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was accomplished through the following means and methods:

3.      Between in or about the dates set forth below, the approximate number of Victim Companies set forth below (a) received fictitious invoices by mail in the names of the Sham Companies set forth below, and (b) made payments to such Sham Companies in the approximate amounts set forth below, by either mailing and delivering checks or electronic payments, which payments funds were deposited into bank accounts and which represented criminally derived property and proceeds of specified unlawful activity:

| SHAM COMPANIES | DATES OF PAYMENT OF FICTITIOUS INVOICES | APPROXIMATE NUMBER OF PAYMENTS BY THE APPROXIMATELY 5,458 VICTIM COMPANIES | TOTAL APPROXIMATE AMOUNT OF PAYMENTS |
|---|---|---|---|
| Office Outlet | 01/2019-07/2021 | 170 | $100,194.90 |
| America's Best | 08/2019-09/2020 | 433 | $254,097.12 |
| United Chemicals | 08/2020-04/2021 | 880 | $524,713.12 |
| Hi-Tech Industrial | 11/2020-04/2021 | 425 | $255,822.78 |
| Nationwide Chemical | 02/2021-09/2021 | 1,145 | $822,583.46 |
| Easton Chemical | 04/2021-05/2021 | 128 | $79,328.86 |

| SHAM COMPANIES | DATES OF PAYMENT OF FICTITIOUS INVOICES | APPROXIMATE NUMBER OF PAYMENTS BY THE APPROXIMATELY 5,458 VICTIM COMPANIES | TOTAL APPROXIMATE AMOUNT OF PAYMENTS |
|---|---|---|---|
| Direct Chemical | 07/2021-11/2021 | 873 | $861,268.66 |
| North Atlantic Supply | 02/2021-09/2021 | 1,805 | $1,385,442.67 |
| Top Tier Chemicals | 07/2021-11/2021 | 1,265 | $1,257,380.40 |
| Safety Supply | 05/2021-04/2022 | 1,210 | $2,188,462.02 |
| Union Gloves | 10/2021-05/2022 | 279 | $281,249.50 |
| *TOTAL (Approximate)* | | *8,613* | *$8,010,543.50* |

4.      Between in or about November 2020, and in or about November 2021, funds that had been deposited into bank accounts in the names of the Sham Companies, which represented criminally derived property and proceeds of specified unlawful activity, were withdrawn and transferred from such bank accounts in amounts greater than $10,000.

5.      Between in or about November 2020, and in or about November 2021, funds that had been deposited into bank accounts in the names of the Sham Companies, which represented proceeds from specified unlawful activity, were withdrawn to promote the carrying on of mail fraud, and to disguise the nature, the location, the source, the ownership and the control of the proceeds of the mail fraud.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

6.      On or about the dates set forth below, the defendants and their coconspirators caused monetary transactions involving criminally derived property with a value greater than

41

$10,000, that is, the withdrawal and transfer of funds in the approximate amounts set forth below from bank accounts in the names of the Sham Companies and other entities identified below by initials, to the bank accounts in the name of the defendants and other entities identified by initials:

| DATE | COMPANY FUNDS FROM | COMPANY FUNDS TO | AMOUNT |
|---|---|---|---|
| 03/17/2021 | NASC | SPS | $ 17,500 |
| 03/17/2021 | NWC | SPS | $32,500 |
| 03/18/2021 | SPS | D.E. | $25,000 |
| 03/18/2021 | SPS | E.H. | $25,000 |
| | | | |
| 03/25/2021 | NASC | SPS | $25,000 |
| 03/25/2021 | NWC | SPS | $25,000 |
| 03/25/2021 | SPS | D.E. | $15,000 |
| 03/25/2021 | SPS | E.H. | $15,000 |
| 03/25/2021 | SPS | Costanza | $15,000 |
| | | | |
| 04/05/2021 | NASC | SPS | $13,000 |
| 04/05/2021 | NWC | SPS | $30,000 |
| 04/05/2021 | SPS | D.E. | $16,000 |
| 04/05/2021 | SPS | E.H. | $16,000 |
| 04/09/2021 | NASC | SPS | $25,000 |
| 04/09/2021 | NWC | SPS | $25,000 |
| 04/09/2021 | SPS | D.E. | $15,000 |
| 04/09/2021 | SPS | E.H. | $15,000 |
| | | | |
| 04/16/2021 | NASC | SPS | $25,000 |
| 04/16/2021 | NWC | SPS | $40,000 |
| 04/16/2021 | SPS | D.E. | $22,000 |

| DATE | COMPANY FUNDS FROM | COMPANY FUNDS TO | AMOUNT |
|---|---|---|---|
| 04/16/2021 | SPS | E.H. | $22,000 |
| 04/16/2021 | SPS | Costanza | $11,000 |
| | | | |
| 04/21/2021 | NASC | SPS | $35,000 |
| 04/22/2021 | NWC | SPS | $28,500 |
| 04/22/2021 | SPS | D.E. | $24,000 |
| 04/22/2021 | SPS | E.H. | $22,000 |
| 04/22/2021 | SPS | Costanza | $12,000 |
| | | | |
| 04/30/2021 | NASC | SPS | $40,000 |
| 04/30/2021 | NWC | SPS | $40,000 |
| 04/30/2021 | SPS | D.E. | $36,800 |
| 04/30/2021 | SPS | E.H. | $36,800 |
| 04/30/2021 | SPS | Costanza | $18,400 |
| | | | |
| 05/06/2021 | NASC | SPS | $60,000 |
| 05/07/2021 | NWC | SPS | $23,000 |
| 05/07/2021 | SPS | D.E. | $30,000 |
| 05/07/2021 | SPS | E.H. | $30,000 |
| 05/07/2021 | SPS | Costanza | $15,000 |
| | | | |
| 05/13/2021 | NASC | SPS | $50,000 |
| 05/13/2021 | NWC | SPS | $22,000 |
| 05/13/2021 | SPS | D.E. | $25,000 |
| 05/13/2021 | SPS | E.H. | $25,000 |
| 05/13/2021 | SPS | Costanza | $12,500 |
| | | | |
| 05/21/2021 | NASC | SPS | $50,000 |
| 05/21/2021 | NWC | SPS | $25,000 |

| DATE | COMPANY FUNDS FROM | COMPANY FUNDS TO | AMOUNT |
|---|---|---|---|
| 05/21/2021 | SPS | D.E. | $26,280 |
| 05/21/2021 | SPS | E.H. | $26,280 |
| 05/21/2021 | SPS | Costanza | $13,140 |
| | | | |
| 05/26/2021 | NASC | SPS | $55,000 |
| 05/26/2021 | SPS | PVC | $47,200 |
| 05/26/2021 | SPS | Costanza | $13,500 |
| | | | |
| 05/27/2021 | NWC | SPS | $11,500 |
| 06/02/2021 | NASC | SPS | $35,000 |
| 06/02/2021 | SPS | D.E. | $31,000 |
| | | | |
| 06/10/2021 | NASC | SPS | $25,000 |
| 06/10/2021 | SPS | PVC | $22,500 |
| | | | |
| 06/18/2021 | NWC | SPS | $20,000 |
| 06/18/2021 | NASC | SPS | $30,000 |
| | | | |
| 06/18/2021 | SPS | PVC | $46,000 |
| | | | |
| 06/25/2021 | NWC | SPS | $64,000 |
| 06/25/2021 | NASC | SPS | $20,000 |
| 06/25/2021 | SPS | PVC | $56,800 |
| 06/25/2021 | SPS | Costanza | $14,200 |
| | | | |
| 07/02/2021 | NASC | SPS | $20,000 |
| 07/02/2021 | NASC | SPS | $20,000 |
| 07/02/2021 | SPS | PVC | $46,000 |
| | | | |
| 07/09/2021 | NASC | SPS | $20,000 |

| DATE | COMPANY FUNDS FROM | COMPANY FUNDS TO | AMOUNT |
|---|---|---|---|
| 07/09/2021 | NASC | SPS | $12,000 |
| 07/09/2021 | NASC | SPS | $20,000 |
| 07/09/2021 | NWC | SPS | $40,000 |
| 07/09/2021 | SPS | PVC | $93,000 |
| | | | |
| 07/23/2021 | NASC | SPS | $65,000 |
| 07/23/2021 | NWC | SPS | $25,000 |
| 07/23/2021 | SPS | PVC | $80,000 |
| | | | |
| 07/30/2021 | NASC | SPS | $57,800 |
| 07/30/2021 | SPS | PVC | $50,000 |
| | | | |
| 08/06/2021 | TTC | SPS | $11,500 |
| 08/06/2021 | SPS | PVC | $45,000 |
| | | | |
| 08/13/2021 | NWC | SPS | $11,500 |
| 08/13/2021 | TTC | SPS | $12,500 |
| 08/13/2021 | SPS | PVC | $39,000 |
| | | | |
| 08/25/2021 | TTC | PVC | $45,000 |
| 08/25/2021 | NASC | PVC | $20,000 |
| | | | |
| 09/02/2021 | TTC | SPS | $32,684.85 |
| 09/02/2021 | SPS | DCM | $14,000 |
| | | | |
| 09/17/2021 | TTC | SPS | $60,280.15 |
| 09/17/2021 | SPS | PVC | $33,804 |
| 09/17/2021 | SPS | DCM | $12,000 |
| | | | |
| 09/24/2021 | TTC | SPS | $21,436.65 |

| DATE | COMPANY FUNDS FROM | COMPANY FUNDS TO | AMOUNT |
|---|---|---|---|
| 09/27/2021 | SPS | DCM | $12,000 |
| 09/30/2021 | SPS | DCM | $12,000 |
| | | | |
| 09/28/2021 | TTC | WCS | $81,224.64 |
| | | | |
| 10/04/2021 | TTC | SPS | $17,187.30 |
| 10/08/2021 | SPS | DCM | $11,800 |
| | | | |
| 10/08/2021 | TTC | WCS | $133,219.71 |
| 10/15/2021 | TTC | WCS | $80,250.99 |
| 10/22/2021 | TTC | WCS | $73,600.73 |
| 10/27/2021 | TTC | WCS | $74,167.84 |
| 11/04/2021 | TTC | WCS | $80,255.43 |
| 11/05/2021 | TTC | Coburn | $11,000 |
| 11/12/2021 | TTC | WCS | $72,361.89 |
| | | | |
| 08/27/2021 | SS | LE | $10,700 |
| 09/16/2021 | SS | LE | $10,645 |
| 09/30/2021 | SS | LE | $11,000 |
| 09/30/2021 | SS | LE | $34,000 |
| 10/08/2021 | SS | LE | $11,200 |
| 10/14/2021 | SS | LE | $40,000 |
| 10/26/2021 | SS | LE | $10,800 |
| 11/01/2021 | SS | LE | $30,000 |
| | | | |
| 10/26/2021 | SS | FSW | $45,000 |
| 11/05/2021 | SS | FSW | $100,192.45 |
| 11/05/2021 | SS | FSW | $80,326.11 |

| DATE | COMPANY FUNDS FROM | COMPANY FUNDS TO | AMOUNT |
|---|---|---|---|
| 11/12/2021 | SS | FSW | $45,215.05 |
| 12/10/2021 | SS | FSW | $30,000 |

7.     Between in or about May 2021, and in or about July 2022, for purposes of promoting the carrying on of the specified unlawful activity, that is, mail fraud, the defendants caused financial transactions with proceeds from the mail fraud, that is, the withdrawal of approximately $196,595.73 from bank accounts belonging to the Sham Companies to pay the United States Postal Service for stamps required to mail out fraudulent documents appearing to be legitimate invoices to the Victim Companies.

8.     Between in or about May 2021, and in or about July 2022, for purposes of promoting the carrying on of specified unlawful activity, that is, mail fraud, the defendants caused financial transactions with proceeds from the mail fraud, that is, the withdrawal and transfer of approximately $239,973.03 from bank accounts belonging to Simple Pro Solutions to pay Federal Express to ship the cheap cleaner/degreaser products to the Victim Companies.

9.     Between in or about May 2021, and in or about July 2022, for purposes of promoting the carrying on of specified unlawful activity, caused financial transactions with proceeds of specified unlawful activity, that is, the withdrawal of approximately $114,070.52 from bank accounts belonging to Safety Supply, Union Gloves, Five Star Warehouse, and Wholesale Chem Supplies LLC to pay United Parcel Service to ship the cheap PPE products to the Victim Companies.

10.     Between in or about May 2021, and in or about July 2022, for purposes of disguising the nature, the location, the source, the ownership and the control of the proceeds of the mail fraud, the defendants caused financial transactions with proceeds from the mail fraud, that is, the withdrawal and transfer of approximately $2,213,709.86 from bank accounts belonging to the Simple Pro Solutions and Wholesale Chem Supplies to bank accounts belonging to belonging to ENGLER and ALEC DIERNA, or to their companies, Prince Venture Capital LLC, Engler Holdings LLC, and Dierna Enterprise LLC.

**All in violation of Title 18, United States Code, Section 1956(h).**

**FIRST FORFEITURE ALLEGATION**
**(Proceeds Forfeiture)**

**The Grand Jury Alleges That:**

Upon conviction of any and all of the offenses set forth in Counts 1 through 50 of this Superseding Indictment, the defendant, JOHN ENGLER, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

**A.   MONETARY SUM**

The approximate sum of $1,999,000.09 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, JOHN ENGLER, is charged in Counts 1 through 50.  In the event that the above

sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

      i.     cannot be located upon the exercise of due diligence;

     ii.     has been transferred or sold to, or deposited with, a third person;

    iii.     has been placed beyond the jurisdiction of the Court;

    iv.     has been substantially diminished in value; or

     v.     has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## B.    **REAL PROPERTY**

     i.     The Premises and Real Property with all Buildings, Appurtenances, and Improvements, located at 5283 Park Place Circle, Boca Raton, Florida, 33486, that is, all that tract or parcel of land, situated in the City of Boca Raton, County of Palm Beach, and State of Florida, and more particularly described in a certain Deed Recorded in Palm Beach County Clerk's Office Book 31307, Page 94.

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

## SECOND FORFEITURE ALLEGATION
### (Proceeds Forfeiture)

**The Grand Jury Further Alleges That:**

Upon conviction of any and all of the offenses set forth in Counts 1 through 50 of this Superseding Indictment, the defendant, ALEC DIERNA, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

A.   **MONETARY SUM**

The approximate sum of $2,085,761.53 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, ALEC DIERNA, is charged in Counts 1 through 50.  In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

     i.     cannot be located upon the exercise of due diligence;

    ii.     has been transferred or sold to, or deposited with, a third person;

   iii.     has been placed beyond the jurisdiction of the Court;

    iv.     has been substantially diminished in value; or

     v.     has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

    **B.**    **REAL PROPERTY**

        i.    The Premises and Real Property with Buildings, Appurtenances, and Improvements at 5091 County Line Rd, Webster, New York, that is, all that tract or parcel of land, situated in the City of Webster, County of Wayne, State of New York, and More Particularly Described in a Certain Deed Recorded in the Wayne County Clerk's Office with an Instrument Number of R9183729.

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

**THIRD FORFEITURE ALLEGATION**
**(Proceeds Forfeiture)**

**The Grand Jury Further Alleges That:**

Upon conviction of any and all of the offenses set forth in Counts 1, and 4 through 9 of this Superseding Indictment, the defendant, TOMMY LEE COBURN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

**MONETARY SUM**

The approximate sum of $239,646.20 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the

defendant, TOMMY LEE COBURN, is charged in Counts 1, 4 through 9.  In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

     i.     cannot be located upon the exercise of due diligence;

     ii.    has been transferred or sold to, or deposited with, a third person;

     iii.   has been placed beyond the jurisdiction of the Court;

     iv.   has been substantially diminished in value; or

     v.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

## FOURTH FORFEITURE ALLEGATION
### (Proceeds Forfeiture)

**The Grand Jury Further Alleges That:**

Upon conviction of any and all of the offenses set forth in Counts 1, and 10 through 20 of this Superseding Indictment, the defendant, KYLE PAUL EDWARD GIBSON, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

**MONETARY SUM**

The approximate sum of $108,899.20 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, KYLE PAUL EDWARD GIBSON, is charged in Counts 1, and 10 through 20. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

 i. cannot be located upon the exercise of due diligence;

 ii. has been transferred or sold to, or deposited with, a third person;

 iii. has been placed beyond the jurisdiction of the Court;

 iv. has been substantially diminished in value; or

 v. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

## FIFTH FORFEITURE ALLEGATION

### (Proceeds Forfeiture)

### The Grand Jury Further Alleges That:

Upon conviction of the offense set forth in Count 1 of this Superseding Indictment, the defendant, NICHOLAS SCARANTINO, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

## MONETARY SUM

The approximate sum of $75,484.00 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offense for which the defendant, NICHOLAS SCARANTINO is charged in Count 1. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

    i.    cannot be located upon the exercise of due diligence;

    ii.    has been transferred or sold to, or deposited with, a third person;

    iii.    has been placed beyond the jurisdiction of the Court;

    iv.    has been substantially diminished in value; or

v.   has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

## SIXTH FORFEITURE ALLEGATION
### (Proceeds Forfeiture)

**The Grand Jury Further Alleges That:**

Upon conviction of any and all of the offenses set forth in Counts 1, 5, 6, 8 and 9 of this Superseding Indictment, the defendant, HEATHER DIERNA, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

### MONETARY SUM

The approximate sum of $43,385.83 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, HEATHER DIERNA, is charged in Counts 1, 5, 6, 8 and 9 In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

  i.  cannot be located upon the exercise of due diligence;

  ii.  has been transferred or sold to, or deposited with, a third person;

  iii.  has been placed beyond the jurisdiction of the Court;

  iv.  has been substantially diminished in value; or

  v.  has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

DATED:  Rochester, New York, May 14, 2024

                                        TRINI E. ROSS
                                        United States Attorney


                    By:            s/RICHARD A. RESNICK
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Western District of New York
                                        100 State Street, Suite 500
                                        Rochester, New York 14614
                                        (585) 263-6760
                                        Richard.Resnick@usdoj.gov

A TRUE BILL:


s/FOREPERSON